# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MELLON,<br>    Plaintiff,<br><br>       v.<br><br>UNIVERSAL CITY STUDIOS,<br>LLC, et al.,<br>    Defendants. | CV 22-03950 DSF (AGRx)<br><br>Order DENYING Plaintiff's Motion to Remand (Dkt. 20) and GRANTING Defendant's Motion to Dismiss (Dkt. 21) |

    Defendant Universal City Studios LLC removed this case from Los Angeles Superior Court based on federal question jurisdiction, dkt. 1 (Notice), and moved to dismiss Plaintiff James Mellon's First Amended Class and Representative Action Complaint (FAC) in its entirety, dkt. 21 (MTD). Mellon moves for remand, dkt. 20 (MTR), and opposes the MTD, dkt. 25 (Opp'n to MTD). Universal Studios opposes the MTR. Dkt. 24 (Opp'n to MTR). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. BACKGROUND

    Mellon was employed by Universal Studios from approximately June 13, 2021 through July 24, 2021. Dkt 17 (FAC) ¶ 9. He held the job title "Retail Clerk/Carnival" and worked at different games every day in Universal Studios' amusement park in Universal City, California. Id. Mellon typically worked from either 11:00 a.m. to 8:00

p.m., or 2:00 p.m. to 10:00 p.m. five days a week. Id. ¶ 10. When Mellon arrived for work at the amusement park, he was required to go through two security checks – a metal detector and a bag check. Id. ¶ 11. The security checks took approximately 5-7 minutes per shift. Id. Mellon had to undergo the security checks before he was able to clock in for his shifts. Id. Mellon alleges the security checks were conducted off the clock and he was "not paid for all the compensable work time during which he was under the direction and control of Defendants." Id. Melon alleges that as a result, Universal Studios failed to properly track the time he worked, failed to pay him all required minimum wages, maintained inaccurate payroll records, issued inaccurate wage statements, and failed to pay Mellon all the wages he was owed on the termination of his employment. Id. ¶¶ 11-13.

Mellon brings a class action on behalf of himself and other similarly situated employees of Universal Studios to recover "unpaid wages and penalties." Id. ¶ 1. Mellon asserts the following California state law wage and hour claims: 1) failure to pay all minimum wages owed (Cal. Lab. Code §§ 204, 558, 1194, 1197, 1198); 2) failure to provide accurate, itemized wage statements (Cal. Lab. Code §226, et seq.); 3) failure to pay all wages upon termination (Cal. Lab. Code §§ 201-203); 4) unfair competition (Cal. Bus. & Prof. Code § 17200, et seq.); and 5) civil penalties under the Private Attorneys General Act (Cal. Lab. Code §§ 558, 2698, et seq.). Id. ¶¶ 3, 22-46.

## II. LEGAL STANDARD

### A. Removal

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a).

"The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that

2

removal is proper." Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing subject matter jurisdiction, the suit must be remanded. 28 U.S.C. § 1447(c). Generally, doubts as to removability are resolved in favor of remanding the case. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

## B.   Motion to Dismiss

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### III. DISCUSSION

#### A.  Federal Question Jurisdiction & Preemption

Universal Studios argues that Mellon's state law claims are completely preempted under Section 301 of the Labor Management Relations Act (LMRA), and therefore arise under federal law. It also asserts that Mellon's claims are "based on rights created by and/or require[] interpretation of a collective bargaining agreement" (CBA) that governs the terms and conditions of Mellon's employment. Notice at 2. Universal Studios further contends that Mellon's second, third, and fourth causes of action are merely derivative of the first cause of action – that Universal Studios failed to pay him minimum wage – and "cannot be maintained if the first cause of action cannot be maintained." Notice at 9. Mellon concedes that his employment relationship with Universal Studios was subject to a CBA. Dkt. 20-1 (Mem. in Supp. of MTR) at 5. However, he contends his "statutory minimum wage (and derivative) claims are not preempted" because "they arise solely under California state law," the CBA will not need to be interpreted in order to address his claims, and his claims "seek to vindicate non-negotiable state law rights" that are not within the scope of the LMRA. Id. at 5-6.

For the Court to have federal question jurisdiction over a complaint, the complaint must arise under federal law. 28 U.S.C. § 1331. Ordinarily, "[t]o determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint and ignore potential defenses." Beneficial Nat. Bank v.

4

Anderson, 539 U.S. 1, 6 (2003). However, there is an exception to the well-pleaded complaint rule for federal statutes that completely preempt a plaintiff's state law claims. Id. at 8.

Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted). If a state law claim is completely preempted by Section 301, the state law cause of action necessarily becomes a federal one and can be removed. Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1406 (9th Cir. 1991), as amended on denial of reh'g (May 4, 1992).

To determine if a claim is preempted by Section 301, courts apply a two-step test. First, the court asks "whether a particular right inheres in state law or, instead, is grounded in a CBA." Matson v. United Parcel Serv., Inc., 840 F.3d 1126, 1132 (9th Cir. 2016) (quoting Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007)). If the claim is founded directly on rights created by a CBA, preemption is warranted. Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987). The second part of the test asks "whether a state law right is 'substantially dependent' on the terms of a CBA." Matson, 840 F.3d at 1132. In doing so, the key question is "whether the claim can be resolved by 'looking to' versus interpreting the CBA." Id. If the claim requires "interpretation" of the CBA, it is preempted; if it requires only "looking to" the CBA, it is not. Id. Interpretation, in this context, is defined narrowly and "it means something more than 'consider,' 'refer to,' or 'apply.'" Id. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Further, "[i]f the claim is based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Matson, 840 F.3d at 1132.

5

Mellon characterizes the right at issue as a right to minimum wage for time spent going through security checks – "compensable work time during which he was under the direction and control of Defendants." FAC ¶ 11; Mem. in Supp. of MTR at 14-15. California law provides employees a non-waivable, non-negotiable right to compensation at minimum wage for time worked. See Cal. Lab. Code § 1194 ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . . ."); Cal. Lab. Code § 1197 ("[T]he payment of a lower wage than the minimum . . . is unlawful.").

The California Industrial Welfare Commission's (IWC) Wage Order No. 10-2001, which governs the amusement and recreation industry, further states that employers must pay employees no less than minimum wage for "all hours worked." Cal. Code Regs. tit. 8, § 11100(4)(A). The Wage Order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Id. § 11100(2)(H). In Morillion v. Royal Packing Co., 22 Cal. 4th 575, 582 (2000), the California Supreme Court examined the same definition of "hours worked" in IWC Wage Order No. 14-80, which applies to agricultural occupations, and concluded that "an employee who is subject to an employer's control does not have to be working during that time to be compensated" under the Wage Order.

Although state law does not explicitly provide that the time required for employees to go through security is compensable, the right to be compensated for "hours worked" is a right conferred as a matter of state law and exists independent of the terms of the CBA. The question then is whether the resolution of the case is "substantially dependent on analysis" of the CBA. See Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).

Universal Studios asserts that the terms of Mellon's employment were subject to a CBA between Universal Studios and "the Amusement

6

Area Employees Union, Local B-192" dated January 16, 2019. Notice at 3. The CBA was effective from January 16, 2019 through January 31, 2022 and Mellon was a member of the union during his employment with Universal Studios. Id.

Article 27 of the CBA, entitled "Rest and Meal Periods," states, in part, that it "sets forth additional benefits than required by law and is not intended, nor should it be interpreted, to provide for less than is required by State or federal law." Dkt. 1-2, Ex. 1 (CBA) at 18.[1] Article 27(g) provides, in relevant part:

> All employees shall be subject to the following walking/changing times:
>
> (i) Employees assigned to the 5511 Building shall receive twelve (12) minutes walking/changing time at the end of their shift.
>
> (ii) Employees assigned to the Upper Lot shall receive twenty-four (24) minutes of walking/changing time at their end of their shift.
>
> (iii) Employees assigned to the Lower Lot (Studio Center) or the Retail Warehouse shall receive thirty-six (36) minutes of walking/changing time at the end of their shift.

---

[1] The Court GRANTS Universal Studios' request for judicial notice of the CBA. See Dkt. 21-2. Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of matters of public record" but "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

> (iv) Employees who are permitted to take their uniforms home or who are not issued uniforms shall receive twelve (12) minutes walking/changing time at the end of their shift."

CBA at 19-20. Article 27 further states:

> The walking/changing time paid each working day is to compensate employees for any time the employee may be subject to the control of the Employer but not actually performing his or her duties, such as, but not limited to, walking to and from wardrobe to work stations and changing into and out of uniforms. Such walking/changing time shall count toward the employee's minimum call.
>
> The Union acknowledges that it has bargained in good faith with the Employer concerning the amount of additional time members are subject to the control of the Employer, and further acknowledges that the time paid pursuant to the Agreement equals or exceeds such time.

CBA at 20. The CBA does not define the term "walking/changing time." See CBA; Opp'n to MTR at 6-7.

Mellon believes the resolution of this case does not require interpreting the CBA because "all that will need to be reviewed . . . is how much time he was under the direction and control of Defendant, and if in fact he was paid all required minimum wages for such time in accordance with California state law." Mem. in Supp. of MTR at 14. Mellon asserts that he is seeking only "California-based statutory minimum wages" – he is not seeking wages owed under the CBA, nor is he seeking extra pay the CBA may require for walking/changing time. Id. at 12.

Universal Studios argues that there is an "active dispute" over the meaning of the "walking/changing time" term in the CBA. Opp'n to MTR at 18. It argues that a resolution of Mellon's state law claims would require the Court to interpret Article 27(g) in order to determine whether the compensation bargained for in the walking/changing

8

provision encompasses the time employees spent passing through security. Notice at 11. It also argues that interpretation of Article 27(g) is required to determine whether union members were subject to the control of the Employer within the meaning of the CBA while undergoing security checks. Opp'n to MTR at 7. Universal Studios contends that Article 27(g) "should be interpreted to mean that Union members should have been compensated for the time they spent going through security checks and they were in fact properly compensated pursuant to Article 27(g)." Notice at 10. Mellon contends that inquiring into whether payments for walking/changing time under the CBA encompassed the time he spent undergoing security checks is irrelevant. Mem. in Supp. of MTR at 14.

The Court finds that the CBA must be interpreted in order to determine whether Mellon was in fact paid for time spent going through security checks. Although Mellon is not seeking wages owed under the CBA, the CBA's walking/changing time provisions provide compensation for "any time the employee may be subject to the control of the Employer but not actually performing his or her duties." CBA at 20. At the same time, Article 27 notes that it provides "additional benefits than required by law," which may be interpreted in at least several different ways. Id. The Court will have to interpret Article 27 to determine whether the parties intended the walking/changing time provisions to compensate employees for time spent going through security checks. If Article 27 was intended to cover that time, Mellon would have been appropriately compensated.

Mellon relies on Valles and Vasserman to argue that his claims are not preempted by Section 301, but the cases are distinguishable. See Mem. in Supp. of MTR at 12-14. In Valles, the employer claimed that the state law right at issue had been waived through the CBA and did not identify any other contractual provision that would need to be interpreted to resolve the employees' claim. Valles v. Ivy Hill Corp., 410 F.3d 1071, 1082 (9th Cir. 2005). The Ninth Circuit concluded that it did not have to interpret the CBA "in order to consider whether a waiver exists because any provision of the [CBA] purporting to waive the right to meal periods would be of no force or effect: The right in

question is plainly nonnegotiable." Id. (citation omitted). Here, Universal Studios does not contend that Mellon's right to minimum wage was waived through the CBA. Opp'n at 15.

In Vasserman, the court concluded that plaintiff's claims were not preempted by Section 301 because she invoked protections provided by state law and there was no need to look to the CBA to determine whether a violation occurred. Vasserman v. Henry Mayo Newhall Mem. Hosp., 65 F. Supp. 3d 932, 961-62 (C.D. Cal. 2014) ("Vasserman pleads a claim for violation of a state law that unambiguously requires employers to provide their employees with uninterrupted, paid meal periods . . . There is no need to look to the CBAs to determine whether a violation has occurred, i.e., whether Vasserman . . . [was] denied the ability to take meal periods."). Here, the Court will be unable to determine whether a violation occurred without interpreting the CBA. The resolution of Mellon's minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27.

Even non-negotiable statutory rights may be preempted if interpretation of a CBA is required to resolve the statutory claims. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 n.7 (1988). The Court finds that Mellon's minimum wage claim is preempted by Section 301 and arises under federal law. Because Mellon's remaining claims – though not grounded in the CBA – are derivative of his minimum wage claim, they will also require interpretation of the CBA. The Court finds that the remaining causes of action are also preempted by Section 301.

The Court has subject matter jurisdiction over Mellon's claims. Mellon's motion to remand is DENIED.

### B. Defendant's Motion to Dismiss

#### 1. Local Rule 7-3

Mellon argues that Universal Studios failed to comply with the requirements of Local Rule 7-3 because the parties did not meet and

10

confer before Universal Studios filed its motion to dismiss. Dkt. 25 (Opp'n to MTD) at 3-5. Mellon's counsel, Scott M. Lidman, submitted a declaration and copies of email correspondence indicating that counsel exchanged multiple emails to schedule a meet and confer. Dkt. 25-1 (Lidman Decl.). Universal Studios' counsel, Remy Kessler, failed to call Lidman on the two dates scheduled for the meet and confer, July 6, 2022 and July 8, 2022. Id. ¶¶ 3-5; Dkt. 25-2, Ex. A. Kessler then emailed Lidman requesting to reschedule the meet and confer over the weekend of July 9, 2022 or on July 11, 2022. Lidman Decl. ¶ 6; Dkt. 25-2, Ex. A. Lidman was unavailable that weekend and out of the office on July 11, but he had his paralegal email Kessler on July 11, 2022 to reschedule the call. Lidman Decl. ¶¶ 6-7; Dkt. 25-3, Ex. B. Universal Studios filed its motion to dismiss on July 11, 2022. See MTD.

Universal Studios asserts that the meet and confer took place on May 26, 2022. MTD at 2. It contends that conference addressed its motion to dismiss the complaint before the FAC was filed. Id. Universal Studios asserts that the "preemption issues addressed in the Motion to Dismiss the Complaint over which the parties conferred pursuant to L.R. 7-3 are the same as those in the instant Motion." Id. The Local Rules and this Court's standing order require counsel to meet and confer at least seven days prior to filing a motion like the one at issue. See L.R. 7-3; Dkt. 11 (Standing Order) ¶ 4(b).

Here, Universal Studios' counsel did not meet and confer with Mellon's counsel at least seven days prior to filing the instant motion. Although the Court admonishes Universal Studios' counsel that future disregard for the Local Rules may result in sanctions, it declines to strike the motion on Rule 7-3 grounds.

### 2. Exhaustion of the CBA's Grievance & Arbitration Procedures

"[T]he conclusion that § 301 precludes adjudication of a state law claim in whole or part does not automatically require dismissal of a union-represented employee's challenge of an employer's actions." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1036 (9th

11

Cir. 2016); see also Cramer v. Consol. Freightways Inc., 255 F.3d 683, 691 n.2 (9th Cir. 2001) ("We note that the Supreme Court recognized in Livadas that where the claim cannot be resolved without interpreting the CBA, '[h]olding the plaintiff's cause of action substantively extinguished may not . . . always be the only means of vindicating the arbitrator's primacy as the bargained-for contract interpreter.'") (citing Livadas v. Bradshaw, 512 U.S. at 124 n.18 (1994)).

Universal Studios moves to dismiss the FAC in its entirety on the grounds that the claims are preempted by Section 301 and the FAC fails to allege that Mellon exhausted the CBA's grievance and arbitration procedure. Dkt. 21-1 (Mem. in Supp. of MTD) at 19.

Section 301 of the LMRA requires "the specific performance of promises to arbitrate grievances in collective bargaining agreements." Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 842 (9th Cir. 2022) (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 451 (1957)). Prior to bringing a suit against an employer, "an employee seeking to vindicate personal rights under a [CBA] must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 985-86 (9th Cir.2007) (citation omitted). An exception to the exhaustion requirement exists where an employee demonstrates that the union representing the employee in the grievance or arbitration procedure breached its duty of fair representation. Id. at 986 (citation omitted). In such cases, an employee can bring suit against both the employer and the union, "notwithstanding the outcome or finality of the grievance or arbitration proceeding." Id. (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983)).

Permitting the district court to proceed before the grievance process has been exhausted would "eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." Columbia Exp. Terminal, LLC, 23 F.4th at 845 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)). Thus, "an

12

employee's failure to exhaust contractually mandated procedures precludes judicial relief for breach of the [CBA] and related claims." Soremekun, 509 F.3d at 986.

Here, the governing CBA establishes mandatory grievance procedures that employees asserting a violation of the terms of the CBA must follow. Article 15 provides that "[a] grievance shall be defined as any difference of opinion or dispute between the Union or an employee covered hereunder and the Employer regarding the interpretation and/or application of this Agreement." CBA at 6. Article 15 sets out a four-step process that involves discussions between the aggrieved employee, his or her supervisor, a union representative, and a Labor Relations representative of the employer, a pre-arbitration hearing, and arbitration. Id. at 7-8. The CBA also provides that Article 15 "shall be the sole and exclusive means of resolving disputes regarding the interpretation or application of this Agreement between the Union (including all employees in the bargaining unit covered by this Agreement) and the Employer." Id. at 8.

Mellon has not alleged that he exhausted his contractual remedies and the union breached its duty of fair representation. The Court GRANTS Universal Studios' motion to dismiss.

## IV. CONCLUSION

Mellon's motion to remand is DENIED. Universal Studios' motion to dismiss Mellon's FAC is GRANTED with leave to amend. Mellon may amend his complaint by September 26, 2022. Failure to amend by that date will result in dismissal of the FAC with prejudice. Leave to amend is granted only to address the specific claims raised in this motion. New claims or parties may be added only by a separate properly noticed motion. A red-lined version of any amended complaint must be provided to the Court's generic email.

IT IS SO ORDERED.

Date: September 2, 2022

                                                    Dale S. Fischer
                                                    United States District Judge